**AMICA MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**Donna MOAK, et al., Defendants.**

**Civ. A. No. H–93–3670.**

United States District Court,
S.D. Texas,
Houston Division.

May 24, 1994.

Amanda S. Hilty, Chalker Bair & Associates, Houston, TX, for Amica Mut. Ins. Co.

Melvin L. Smith, Jr., Domingue & Smith, Houston, TX, for Donna Moak.

Robert L LeBoeuf, LeBoeuf & Wittenmyer, Angleton, TX, for Jayson Moak, Joel Moak.

Joel C. Thompson, Houston, TX, for Jerome Moak, Dorothy Moffett.

### *MEMORANDUM AND ORDER*

CRONE, United States Magistrate Judge.

Pending before the court are several motions for summary judgment and declaratory judgment filed by defendants Donna Moak (Docket Entry # 11), Jayson and Joel Moak (Docket Entry # 's 21 and 33), Blake Moak (Docket Entry # 's 24 and 34), and Jerome Moak and Dorothy Moffett (Docket Entry # 's 25 and 33). After a review of the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court finds that Donna Moak's motion should be denied and all other defendants' motions granted.

### 1. *Background.*

This is an interpleader action filed by Amica Mutual Insurance Company ("Amica") in which Amica deposited the sum of $500,-000.00 into the registry of the court. This sum represents the total underinsured motorist limits under a personal automobile insurance policy issued by Amica to David A. Moak ("David") and his wife, Donna Moak ("Donna"). Subsequent to its issuance, David died from injuries sustained in an automobile accident. The accident was caused by the negligence of David Bohuslav ("Bohuslav") while in the course and scope of his employment with Bohuslav Trucking, Inc.

David is survived by Donna, who is the independent executrix of David's estate, and, along with David, is a named insured under the policy. He is also survived by his minor son, Blake Moak ("Blake"), and two adult sons from a previous marriage, Jayson ("Jayson") and Joel ("Joel") Moak. Also surviving David is Dorothy Moffett ("Dorothy"), David's mother, and Jerome Moak ("Jerome"), David's father, who was previously married to Dorothy Moffett.

Neither Jerome, Dorothy, Jayson, nor Joel was a member of David's household at the time of his death. Jayson and Joel had not resided with David for the ten years preceding his death. Moreover, David did not provide any financial support to his parents or apparently to Jayson or Joel. The premiums for the policy were paid by David and Donna, presumably from community funds. Each of these parties has filed, either separately or in combination, both a motion for summary judgment and a declaratory judgment action.

All of the individuals mentioned above brought suit against Bohuslav and his trucking company ("the Bohuslav defendants") in Harris County Probate Court to recover damages arising out of the automobile accident. Because Truck Insurance Exchange, the Bohuslav defendants' insurer, was unable to settle the adverse claims asserted by all of the wrongful death claimants, Truck Insurance Exchange filed an interpleader action in the United States District Court for the Southern District of Texas, Houston Division. After all the claimants reached a tentative agreement, the probate court refused to approve it as presented. Instead, the court heard evidence and came up with its own apportionment. This apportionment was subsequently adopted by the United States District Court in the interpleader action. Although Bohuslav was covered by liability insurance in the amount of $1,000.000.00, this sum was insufficient to satisfy the combined damages sustained by David's estate and his surviving wrongful death beneficiaries. These claimants then instituted the instant action seeking to recover benefits under the underinsured motorist provisions of David and Donna's automobile insurance policy.

The crux of this dispute centers on the interpretation of the term "covered person" as it is defined in the insurance policy. It is Donna's contention that only she and David's estate are entitled to the proceeds of the insurance policy. Jayson, Joel, Dorothy, and Jerome, according to Donna, are not entitled to benefits under the policy because they are not "covered persons." Donna claims that Blake is not entitled to recover because he has not suffered damages compensable under the policy.

### II. *Analysis.*

#### A. *Interpretation of the Policy.*

This court's role in determining whether to grant summary judgment in a

case involving the construction of an insurance policy is to determine whether there is ambiguity in the applicable terms of the policy. *CBI Indus. v. National Union Fire Ins. Co.*, 860 S.W.2d 662, 664 (Tex.App.—Houston [1st Dist.] 1993, writ granted); *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917 (Tex. App.—Fort Worth 1988, writ denied). Such a determination is a question of law. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987). Texas rules of construction are applicable in this diversity action, as it is the forum state and Texas law governs. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1238 (5th Cir. 1986). These rules require that when the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms. *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965). An insurance policy is ambiguous only when it is "reasonably susceptible to more than one meaning ... but if only one reasonable meaning clearly emerges it is not ambiguous." *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d at 1238; *Blaylock v. American Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 722 (Tex. 1982). Moreover, courts should not strain to find ambiguity if, in so doing, they defeat the probable intentions of the parties, even when the result is an apparently harsh consequence to the insured. *Calcasieu–Marine Nat. Bank v. American Employers' Ins. Co.*, 533 F.2d 290, 295 (5th Cir.), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). Applying this standard, the court finds no ambiguity in the terms of the policy.

■ The insurance policy at issue here follows a form adopted by the Texas State Board of Insurance and is in compliance with the Texas Insurance Code, Articles 5.06, 5.06–1 and 5.06–3. No legislative history, however, addresses the specific language in dispute in this litigation. In fact, this appears to be a case of first impression. All claimants in the case contend that they are "covered persons" as defined in the Uninsured/Underinsured Motorist Coverage provision of the policy. Donna takes the position that she and Blake are the only claimants who qualify as "covered persons" under the policy. The applicable policy language reads:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.
>
> **"Covered Person"** as used in this Part means:
>
> 1. You or any family member;
> 2. Any other person occupying your covered auto;
> 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

Jayson, Joel, Dorothy, and Jerome claim that they are "covered persons" as defined in category 3. These individuals claim that David was a person described in category 1 who sustained bodily injuries that ultimately resulted in his death. Jayson, Joel, Dorothy, and Jerome, each of whom falls within the meaning of "any person," argue that they are entitled to recover as a result of David's injuries and ensuing death because they are all statutory wrongful death beneficiaries. Blake claims that he, too, fits within the category 3 definition of "covered person" and also qualifies under category 1 as a "family member," a person who is a resident of the named insureds' household and is related by blood, marriage or adoption. Therefore, contrary to Donna's position, Jayson, Joel, Dorothy, Jerome, and Blake contend that they are each entitled to recover a share of the $500,-000.00 underinsured motorist proceeds.

The court concurs with this broad interpretation of the policy. The policy defines "covered person" in category 3 as "any person for damages that person is entitled to recover because of bodily injury ... sustained by a person described in 1. or 2. above." While perhaps awkwardly phrased,

the language is not ambiguous or susceptible to more than one meaning. The definition of "covered person" encompasses all persons having a claim against an uninsured/underinsured motorist for the injury or death of the named insured, any family member, or any passenger in the covered vehicle. Category 3 does not restrict the class of persons who may recover under the policy, so long as they are otherwise entitled to recover because of bodily injury to a person who qualifies under categories 1 or 2. It refers to "any person." Likewise, the policy does not limit the type of damages for which a person may recover. The only restriction is that the damages must result from the bodily injury of the named insured, any family member, or a passenger in the automobile. The purpose underlying uninsured/underinsured motorist protection was elucidated by the Texas Supreme Court in *Stracener v. United Serv. Auto. Ass'n,* 777 S.W.2d 378, 384 (Tex.1989):

> By purchasing this coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others.

This purpose is best effectuated by extending coverage to a relatively wide range of beneficiaries. By contrast, it is frustrated by Donna's narrow construction of the policy, which accords benefits only to her and David's estate.

The Texas Wrongful Death Act permits recovery by a decedent's surviving spouse, children and parents for losses they sustained as a result of the decedent's death. Tex.Civ.Prac. & Rem.Code § 71.004; *Heil Co. v. Grant,* 534 S.W.2d 916, 924 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.). As a result of David's death, Jayson, Joel, Dorothy and Jerome may recover for loss of consortium under the Act. Blake may recover damages stemming from the loss of David's financial support, as well as loss of consortium. Because David's sons, Jayson, Joel, and Blake, and his parents, Dorothy and Jerome, are entitled to recover as wrongful death beneficiaries, they also are entitled to receive benefits under the policy. *See Ranger Ins. Co. v. Estate of Mijne,* 991 F.2d 240,

243 (5th Cir.1993); *Entzminger v. Provident Life & Acc. Ins. Co.,* 652 S.W.2d 533, 536 (Tex.App.—Houston [1st Dist.] 1983, no writ).

Donna argues that category 3 was drafted merely to provide for payment to providers of emergency services, *i.e.,* doctors, hospitals, ambulances, tow trucks, etc. In support of this argument, Donna cites authority interpreting virtually identical language that holds such providers to be "persons" entitled to recover damages. *See Government Employees Ins. Co. v. United States,* 376 F.2d 836, 837 (4th Cir.1967). This court is not in disagreement with that decision. To the contrary, it lends support to this court's holding that if such third party providers are entitled to recover under the policy due to contractual, statutory, or *quantum meruit* claims, then Jayson, Joel, Jerome, Blake, and Dorothy, who have statutory claims, are likewise entitled to recover.

Donna further asserts that in view of the provision of the policy providing for a transfer of David's interest in the policy upon his death, only she is entitled to the proceeds. The provision entitled "Transfer of Your Interest In This Policy" states that in the event that a named insured dies, "coverage" will be provided for the surviving spouse or legal representative. Contrary to Donna's contention, this provision does not state that "benefits will be disbursed" to such person. Instead, it provides only for a transfer of a named insured's coverage. Thus, in the event that the named insured dies, the policy will then be transferred to the decedent's surviving spouse or the decedent's legal representative as if he or she were a named insured. In the instant case, Donna was already a named insured under the policy. Accordingly, this provision has no bearing on the dispute before the court, and Donna's reliance on it is unfounded.

The court's interpretation also comports with Amica's reading of the policy. In its brief in response to the numerous motions for summary judgment, Amica states that its understanding of this provision of the policy is that any person having a legal right to recover under the Texas Wrongful Death Act has a legal right to recover under the insur-

ance policy. In support of its position, Amica submitted the affidavit of Richard S. Geiger ("Geiger"), who served on the advisory committee to the State Board of Insurance, which was appointed to revise the family automobile policy to the format currently in use and at issue here. All insurers writing private passenger motor vehicle insurance in Texas must use the form promulgated by the State Board of Insurance and may not vary its language. According to Geiger, under category 3 of the uninsured/underinsured motorist provision, all persons having a claim against an uninsured motorist for the death of the named insured, any family member, or a passenger in the covered automobile are entitled to recover. Moreover, Geiger points out that the provision providing for a transfer of interest in the policy is just that, a transfer of an interest in being insured. It has no bearing on how, or to whom, the benefits under the policy are to be disbursed.

The court recognizes this outcome may not seem equitable to Donna, who, along with David, had the foresight to purchase uninsured/underinsured motorist coverage. It can be credibly argued that Donna should reap the benefit of her purchase, to the exclusion of others, who played no role in securing the insurance. This may, in fact, be the preferred approach. However, the policy language, as selected by the Texas State Board of Insurance, does not restrict recovery to those who paid the premiums or even to those whom the deceased was supporting at the time of his death. Moreover, if it had been a non-related passenger who had been killed, Donna could not plausibly maintain that she would be entitled to recover under the policy merely because she had paid the premiums. Instead, the proceeds would go to those who were legally entitled to recover damages as a result of the death of the passenger. Therefore, it is not for this court to read limits into the broad language of the policy or to impose a *quid pro quo* requirement when the state policymakers saw fit to adopt a global approach instead.

### B. *Collateral Estoppel.*

■ Having determined that all of the claimants before the court are entitled to

benefits under the policy, the question of the proper apportionment of the proceeds must be addressed. Certain of the defendants contend that the parties are collaterally estopped from relitigating the apportionment question in view of the earlier decisions of the probate court and the district court in the proceedings involving the Bohuslav defendants.

The doctrine of collateral estoppel precludes the relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). Trial courts have been accorded wide latitude in ascertaining when collateral estoppel may be applied. *In re Lewisville Properties, Inc.,* 849 F.2d 946, 949 (5th Cir.1988). A party seeking to invoke the doctrine of collateral estoppel must establish: (*i*) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (*ii*) those facts were essential to the judgment in the first action; and (*iii*) the parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

Here, the requirements of collateral estoppel have been met. Identical issues of fact, *i.e.,* the proper apportionment and distribution of insurance proceeds between the various parties for damages sustained as a result of David's death, were litigated and were essential to the judgment in the previous suits. In the probate action, Donna sought recovery for damages as the representative of David's estate and in her individual capacity. On behalf of the estate, Donna sought damages under the Texas Survival Act. Tex. Civ.Prac. & Rem.Code § 71.021. On her own behalf, Donna sought wrongful death damages. Likewise, Blake, Jayson, Joel, Dorothy, and Jerome sought recovery for wrongful death damages. These are the same elements of damages that are in question in this case.

In addition, contrary to Donna's assertion, these same parties were cast as adversaries in both the probate proceeding and the interpleader action. Although Donna argues that the other claimants were aligned with her

**170**

when they all sought wrongful death damages from the Bohuslav defendants, they were still her adversaries in that they were competing for the greatest share possible of a finite amount of money. Moreover, despite Donna's contention, the doctrine of collateral estoppel also applies to so-called "friendly suits." *Forbis v. Trinity Universal Ins.*, 833 S.W.2d 316, 319 (Tex.App.—Fort Worth 1992, writ dism'd). Collateral estoppel applies where, as here, the party against whom the plea of collateral estoppel is being asserted was a party, or in privity with a party, in the prior litigation. *Mower v. Boyer*, 811 S.W.2d 560, 563 (Tex.1991). Therefore, the parties to this proceeding are barred from relitigating the proper apportionment of the underinsured motorist insurance proceeds. The apportionment made by the probate court, determined after an evidentiary hearing and adopted by the district court, is dispositive of this issue.

III. *Conclusion.*

The court finds the language contained in David and Donna's underinsured motorist policy to be unambiguous and susceptible to only one meaning. Giving the language its plain meaning, the policy provides benefits to all those who have a legal right to recover damages as a result of bodily injury to the named insured, the named insured's family, or a passenger in the covered automobile. Accordingly, all of the claimants are entitled to benefits under the policy because they each have a legal right to recover damages arising from David's injury and ensuing death by virtue of the Texas Wrongful Death Act. The proceeds will be apportioned among the parties under the formula used by the probate court and approved by the district court in the prior interpleader action.

Accordingly, Donna's Motion for Summary Judgment is DENIED and the Motions to Dismiss or in the Alternative for Summary Judgment filed by all the other defendants are GRANTED.

IT IS SO ORDERED.