Thomas **CARTER,** Mary Carter, and Ed Carter, Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. 2–00–100–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 2, 2000.

Rehearing Overruled Dec. 14, 2000.

---

1. *Almanza v. State,* 686 S.W.2d 157, 174 (Tex. Crim.App.1985) (op. on reh'g).

Paxton, Beal, L.L.P., Eric D. Beal, Arlington, for Appellant.

Colaneri, Massad & Reilly, P.C., Bobbi Reilly and Janet K. Colaneri, Arlington, for Appellee.

Panel A: CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellants Thomas Carter, Mary Carter, and Ed Carter appeal from a take nothing summary judgment. In five points, the Carters argue that the trial court erred in granting State Farm's summary judgment motion because (1) it lacked specificity; (2) it was based upon an incorrect legal premise; (3) State Farm did not conclusively establish the necessary factual predicate; (4) State Farm mischaracterized the Carters' insurance code claims and failed to establish any basis for summary judgment on the claims actually pled by the Carters; and (5) the motion was granted as to Ed Carter and Mary Carter's claims even though State Farm did not address their claims in its motion for summary judgment. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 1997, Thomas Carter, Kari Brunson, Jeff Goodman, Michelle Keeffe, and Craig Derrick were traveling west on I–30 in an Isuzu Amigo. At the same time, Jennifer Puterbaugh was traveling west on I–30 at a high rate of speed weaving through traffic and struck the Isuzu from behind. The collision caused the death of Kari Brunson and injured the

four other occupants of the Isuzu. State Farm insured Michelle Keeffe, the Isuzu's owner, against loss caused by bodily injury and property damage under a $50,000 per person up to $100,000 per incident uninsured/underinsured (UM/UIM) policy.

On May 15, 1997, State Farm sent a letter to Thomas Carter's attorney suggesting that the potential claimants to the Keeffe policy meet for a settlement conference. The attorney replied that a settlement conference was premature because Thomas Carter and Jeff Goodman were still receiving medical treatment for the injuries they sustained and they did not yet know the extent of their damages. State Farm notified Carter's attorney on June 9, 1997, that State Farm had received a demand for $50,000 from Kari Brunson's estate and that they had to decide that day whether or not to pay the demand. State Farm accepted the demand of Brunson's estate and paid out policy limits of $50,000, leaving only $50,000 available for any remaining claims. State Farm notified the potential claimants of that settlement by letter.

Carter and Goodman then demanded $50,000 each to settle their claims. State Farm replied that it stood by its decision to pay Brunson's estate $50,000 and again encouraged Carter and Goodman to participate in the settlement conference scheduled for August 29, 1997. At the conference, the attorney representing Carter refused to consider settling his claim for less than $50,000, and Goodman said he wanted no settlement on Keeffe's policy, at that time, because he had uninsured motorist coverage under his own policy. State Farm settled Keeffe's and Derrick's claims by paying $35,000 to Keeffe and $10,000 to Derrick. State Farm then unconditionally tendered a check for $4,000 to Carter and a check for $1,000 to Goodman.

On May 1, 1999, the Carters filed suit alleging State Farm had breached the duty of good faith and fair dealing; violated insurance code article 21.21 and the De-ceptive Trade Practices Act (DTPA); and breached the contract of insurance to which they were third party beneficiaries. State Farm filed a motion for summary judgment claiming it was entitled to judgment as a matter of law on each of the claims because State Farm had not violated any of its contractual, statutory, or common-law duties toward Carter.

## STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex.1996); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or

defense as a matter of law. *City of Houston*, 589 S.W.2d at 678. A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

## THE EVIDENCE

■ In their first point, the Carters argue that the trial court erroneously granted State Farm's motion for summary judgment because it lacked specificity. Nevertheless, State Farm's motion specifically set out the grounds for which it is entitled to summary judgment. State Farm contended that there was no breach of contract; that there was no breach of the duty of good faith and fair dealing; and were no statutory violations. State Farm asserted that there was no breach of contract because State Farm's settlement of the claims presented by Keeffe, Derrick, and Brunson's estate were reasonable, even though the settlements depleted most of the uninsured motorist coverage available under Keeffe's policy. The Carters urge us to consider only whether State Farm's actions were reasonable as to the Carters' claims, not whether State Farm reasonably settled the other claims. We cannot do that. An insurance company does not breach its contract by settling with covered persons, even when the settlement depletes or exhausts the policy proceeds. *Lane v. State Farm Mut. Auto. Ins. Co.*, 992 S.W.2d 545, 552 (Tex.App.—Texarkana 1999, pet. denied). The evidence demonstrates that State Farm did not breach its contract.

■ Moreover, State Farm asserted that there was no breach of the duty of good faith and fair dealing because State Farm's settlement of the Keeffe, Derrick, and Brunson's estate claims was reasonable. In response to State Farm's motion for summary judgment, the Carters did not produce evidence that State Farm breached the duty of good faith and fair dealing. In order to establish liability for breach of the duty of good faith and fair dealing Thomas Carter must show that State Farm denied or delayed payment of his claim when liability to pay was reasonably clear, and that State Farm knew or should have known it was reasonably clear. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex.1997). The facts before the court did not present evidence that State Farm delayed paying Thomas Carter's claim. To the contrary, the evidence is clear that State Farm did not deny or delay payment, but rather requested that the parties come together for a settlement conference to determine a fair division of the policy proceeds. It was Thomas Carter's attorney who insisted that it would be premature to settle the claim because Carter was still being treated for injuries. Furthermore, the Carters' attorney refused to accept settlement of any amount less than the remaining policy limits at the settlement conference, which would have exhausted all of the remaining funds available under Keeffe's policy. Therefore, State Farm did not act unreasonably in settling with the two remaining claimants who were still willing to negotiate the settlement of their claims. An insurer will not be liable in bad faith claims for settling reasonable claims with one of several claimants even if such settlement exhausts or diminishes the proceeds, when faced with settlement demands arising out of multiple claims and inadequate proceeds. *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex.1994). The evidence demonstrates that State Farm did not

breach the duty of good faith and fair dealing.

■ Finally, State Farm also presented evidence that negates the Carters' extra-contractual claims. State Farm's summary judgment motion asserted that its actions did not constitute violations of article 21.21 of the insurance code and the DTPA because the factual basis for the Carters' statutory claims was the same as that used for the common law bad faith claim and should fail as a matter of law. *See Lane,* 992 S.W.2d at 554. When extra-contractual causes of action (e.g., deceptive trade practices and insurance code claims) do nothing more than recharacterize the plaintiff's bad faith claim, a defense to a bad faith claim serves to defeat the extra-contractual causes of action. *Id.* The Carters failed to present evidence or brief the manner in which they believe that State Farm's motion for summary judgment was not specific enough on this claim, so we will not address it. We hold that State Farm was entitled to summary judgment as a matter of law because the evidence does not demonstrate a dispute of the material facts upon which State Farm moved for summary judgment. We overrule point one.

### THE LEGAL PREMISE

■ In their second point, the Carters argue that the trial court erroneously granted State Farm's motion for summary judgment because it was based on an incorrect legal premise. The Carters assert that State Farm was relying on one of three alternative theories in its assertion that it breached no duty owed the Carters: the "we've fully performed" defense; the "we're excused" defense; and the "we don't have that duty" defense. The Carters contend that State Farm should have investigated their claim because investigation would have shown that State Farm's settlements were not reasonable. However, settlements that result in the exhaustion of policy limits excuse further performance by the insurer on behalf of the

other insureds. *See Am. States Ins. Co. of Tex. v. Arnold,* 930 S.W.2d 196, 201 (Tex. App.—Dallas 1996, writ denied). There is no evidence to demonstrate that State Farm relied on an incorrect legal premise in its motion for summary judgment. We overrule point two.

### FACTUAL PREDICATE

■ In their third point, the Carters argue that the trial court erroneously granted State Farm's motion for summary judgment because State Farm did not meet its burden of conclusively establishing the necessary factual predicate. The Carters contend that even if the court finds that State Farm was excused from acting reasonably or did in fact act reasonably towards the Carters, State Farm still failed to conclusively establish that it acted reasonably towards the other claimants. It is clear that when an insurer can demonstrate that its settlements in one of several competing claims was reasonable, there is no violation even if the settlement exhausts the policy proceeds available for the other insureds. *Soriano,* 881 S.W.2d at 315; *Lane,* 992 S.W.2d at 552. In their response to State Farm's motion for summary judgment, the Carters conceded that $50,000 was a reasonable amount of compensation for Brunson's death. The amount of the settlement between State Farm and Brunson's estate was $50,000. Therefore, the material facts are not in dispute and State Farm conclusively established the settlement with a competing claimant in this case was reasonable. We overrule point three.

### CLAIM CHARACTERIZATION

In their fourth point, the Carters argue that the trial court erroneously granted State Farm's motion for summary judgment on the insurance code claims because State Farm mischaracterized the Carters' claims and thereafter failed to establish any basis for summary judgment on the claims actually pled by the Carters. The Carters state that State Farm mischarac-

**374**

terized their insurance code claims as based solely on common law duties. The Carters assert that State Farm "refused, failed or unreasonably delayed an offer of settlement under applicable first-party coverage on the basis that other coverage may be available," and that State Farm did not establish a basis for summary judgment on this ground. *See* Tex. Ins .Code Ann. art. 21.21, § 4(10)(a)(vi) (Vernon Supp.2000).

The evidence establishes that State Farm offered to settle with Thomas Carter and that his attorney stated it was too early to settle. In addition, the uncontroverted evidence establishes that, at the settlement conference, the Carters' attorney refused to settle Thomas Carter's claims for less than $50,000, the remainder of the policy limits, which would leave State Farm with no funds from Keeffe's policy with which to settle with the remaining two claimants. We hold that State Farm did not violate article 21.21 section 4(10)(a)(vi) because it has established that it did not refuse or delay an offer of settlement. We overrule point four.

### Ed and Mary Carter

 In their final point, the Carters argue that the trial court erroneously granted State Farm's motion for summary judgment as to Ed and Mary Carters' claims against State Farm because State Farm did not address those claims in their motion. In their original petition, Ed, Mary, and Thomas Carter were all listed as the plaintiffs. Ed and Mary Carters' claims, like Thomas Carter's claims, arise out of the manner that State Farm settled the claims under Keeffe's UM/UIM policy. The policy clearly stated that State Farm would "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person." (Emphasis omitted). However, Ed and Mary Carter listed their damages solely as the loss of

consortium of their son, Thomas, due to the injuries he suffered in the accident. They could not list any bodily injuries that they sustained as a result of the accident and subsequent settlements because they were not involved in the accident. Their claims arise solely out of the bodily injuries sustained by Thomas Carter. Loss of consortium damages are not bodily injuries, and declaratory or summary judgments for insurers have been upheld in similar cases. *See McGovern v. Williams,* 741 S.W.2d 373, 374–75 (Tex.1987); *Miller v. Windsor Ins. Co.,* 923 S.W.2d 91,. 97 (Tex.App.—Fort Worth 1996, writ denied); *Eshtary v. Allstate Ins. Co.,* 767 S.W.2d 291, 293 (Tex.App.—Fort Worth 1989, writ denied). We overrule point five.

### Conclusion

Having carefully considered all of Appellants' points, we have overruled each. We affirm the trial court's judgment.